## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jason Lewis, an individual,                              Civil No. 20-1212 (DWF/HB)
Jason Lewis for Senate, a Minnesota
Non-profit corporation,

                    Plaintiffs,

v.                                                       **MEMORANDUM OPINION**
                                                         **AND ORDER**

Timothy J. Walz, in his official
capacity as Governor of the
State of Minnesota,

                    Defendant.

---

Charles R. Shreffler, Jr., Esq., Shreffler Law, Ltd., and Justin R. Clark, Esq., Elections
LLC, counsel for Plaintiffs.

Elizabeth C. Kramer, Jacob D. Campion, and Janine Wetzel Kimble, Office of Minnesota
Attorney General.

---

## INTRODUCTION

This matter is before the Court on Defendant Governor Timothy J. Walz's

("Defendant" or "Governor Walz") Motion to Dismiss.  (Doc. No. 12.)  For the reasons

set forth below, the Court grants the motion.

## BACKGROUND

Plaintiffs are a U.S. Senate candidate and a non-profit corporation and the

principal campaign committee supporting Jason Lewis' election to the U.S. Senate

("Plaintiffs").  (Doc. No. 1 ("Compl.") ¶¶ 7, 8.)  On May 20, 2020, Plaintiffs filed the

present action against Governor Walz in his official capacity based on alleged injuries arising from asserted violations of the Fourth and Fourteenth Amendments.  Plaintiffs claim that their injuries stem from certain executive orders pertaining to the COVID-19 pandemic that allegedly restrict their ability to travel and effectively campaign in the run up to the 2020 United States Congressional Election.

COVID-19 is an infectious disease caused by a newly discovered coronavirus that spreads primarily (and easily) from person-to-person contact through respiratory transmission.  (Doc. No. 16 ("Kramer Decl.") ¶¶ 5, 12, Exs. 2, 9.)  At this time, there is no known vaccine.  (*Id.*)  As of June 11, 2020, 29,315 Minnesotans had tested positive for COVID-19 and 1,249 have died.  (*Id.* ¶ 4.)  As of September 27, 2020, the virus has infected over 7,000,000 people and caused over 200,000 deaths nationwide.  *See* https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days.  In Minnesota, the virus has infected over 95,000 people and caused over 2,000 deaths.  *Id.*

On March 13, 2020, President Trump declared a national emergency related to the outbreak of COVID-19.  (Kramer Decl. ¶ 9, Ex. 6.)  That same day, Governor Walz issued Executive Order 20-01 and declared a peacetime emergency in response to the COVID-19 pandemic.  (*Id.* ¶ 11, Ex. 8.)  The order "encourage[d] individual Minnesotans to help protect all Minnesotans by continuing their individual prevention efforts such as staying home when feeling sick, frequently washing their hands, and monitoring information about COVID-19" and "urge[d] and advise[d] Minnesotans to follow MDH guidance regarding hygiene, public gatherings, social distancing, and healthcare use."  *Id.*

Governor Walz has continued to issue emergency executive orders in an effort to slow the spread of COVID-19, protect the capacity of the state's medical system, and to ensure the continued operation of critical sectors to protect the public's access to necessary services and supplies.  *See* Emergency Executive Orders 20-02 through 20-63, 20-66, 20-70, and 20-73 through 20-74.  (*See* https://www.leg.state.mn.us/lrl/execorders/eoresults?gov=44.)  Governor Walz also issued temporary stay-at-home orders, which are at issue in this case, and which have since expired or been rescinded.

For example, recognizing that limiting contact between people is the most effective way to slow the spread of COVID-19 (Kramer Decl. ¶ 12, Ex. 9), on March 25, 2020, Governor Walz issued Executive Order 20-20, directing Minnesotans to stay at home except to engage in certain exempted activities and critical sector work.  (*Id*. ¶ 13, Ex. 10.)  This order allowed for intrastate travel to and from exempted activities and all "travel into and out of Minnesota."  (*Id*.)  Political campaign activities were not exempt or designated "essential."  (*Id*.)  Violations were enforceable by "a fine not to exceed $1,000 or by imprisonment for not more than 90 days."  (*Id*.)

On April 8, 2020, Governor Walz issued Executive Order 20-33, which rescinded Executive Oder 20-20, but retained the stay-at-home provisions relevant to the present action.  (*Id*. ¶ 14, Ex. 11.)  In particular, the order adopted the then-current version of federal guidance on critical sectors, clarified certain categories of exempt workers, and modified penalties for violations of the order.  (*Id*.)  The order encouraged Minnesotans

to stay close to home and strongly discouraged unnecessary travel, but again, allowed for "travel into and out of Minnesota."  (*Id*.)

On April 30, Governor Walz issued a modified stay-at-home order, Executive Order 20-48, rescinding Executive Order 20-33.  (*Id*. ¶ 17, Ex. 14.)  Executive Order 20-48 (*see also* 20-38 and 20-40) permitted non-critical manufacturing and office employees to return to work under specific conditions and allowed additional outdoor recreation activities that could be performed under conditions specified by MDH and the Minnesota Department of Natural Resources.  (*Id*. ¶¶ 15-17, Exs. 12-14.)  These orders continued to allow "travel into and out of Minnesota."  (*Id*.)

On May 13, 2020, Governor Walz issued Executive Order 20-56, which rescinded the stay-at-home order and prohibited gatherings of more than ten individuals unless the individuals were in their vehicles.  (*Id*. ¶ 18, Ex. 15.)  The order took effect on May 18, 2020.

Since Plaintiffs filed the present action, Governor Walz replaced Executive Order 20-56 with Executive Order 20-63.  (*Id*. ¶ 19, Ex. 16.)  On June 5, 2020, Executive Order 20-74 replaced Executive Order 20-63, permitting outdoor gatherings of up to 25 people.  (*Id*. ¶ 20, Ex. 17.)  The order took effect on June 10, 2020.  Willful violations of the order were punishable "by a fine not to exceed $1,000 or by imprisonment for not more than 90 days."  *Id.*  Since the expiration of the stay-at-home order on May 18, 2020, unnecessary travel is discouraged but not prohibited.  (*Id.*, Exs. 15, 16, 17.)  Presently, gatherings in private homes remain subject to the social gathering limits of Executive Order 20-74—10-person limit indoors and 25-person limit outdoors.

https://www.health.state.mn.us/diseases/coronavirus/safeevents.pdf.   In event spaces and venues, the limitation on capacity for both indoor and outdoor gatherings is no more than 25% capacity up to 250 persons, so long as social distancing is maintained.  *Id.*

## DISCUSSION

Defendant moves to dismiss Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S.

5

at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

In the Complaint, Plaintiffs allege that Governor Walz's executive orders create an unconstitutional ban on travel and violate the Equal Protection Clause of the Fourteenth Amendment.  Defendant moves to dismiss Plaintiffs' claims on various justiciability grounds as well as on the merits of the claims themselves.  More specifically, Defendant argues that Plaintiffs fail to state a claim for plausible relief and do not allege a constitutional injury sufficient to overcome the high burden for challenging an emergency order issued during a public health crisis.  In addition, Defendant argues that Plaintiffs' claims are moot, Governor Walz is entitled to Eleventh Amendment immunity, and Plaintiffs lack standing.

In Counts One and Two, Plaintiffs allege that Governor Walz is violating their constitutional right to travel.[1]  Plaintiffs argue that the Governor's emergency executive orders restrict the travel of individuals by limiting the size of both indoor and outdoor

---

[1]    While not entirely clear in the Complaint, Plaintiffs appear to challenge the Governor's Executive Orders 20-20 and 20-56, both of which have expired or been rescinded.  (Compl. ¶¶ 12, 14.)  Plaintiffs refer to the Governor's emergency executive orders as "Travel Ban Orders" and take issue with the orders' stay-at-home provisions and size limitations on gatherings.  Plaintiffs assert that "[s]ome form of these orders remain in force today and limit Plaintiffs' ability to travel, and particularly limit their first amendment right to campaign for office."  (Doc. No. 19 at 2.)  Executive Order 20-74 banned indoor gatherings larger than ten (10) individuals and outdoor gatherings larger than twenty-five (25) individuals.  (Kramer Decl. ¶ 20, Ex. 17.)  As noted above, the current limitations on gatherings in event spaces and venues, both indoor and outdoor, are no more than 25% capacity up to 250 persons, so long as social distancing can be maintained.  Plaintiffs appear to argue that *any* size limitation is unconstitutional.

gatherings.  Specifically, Plaintiffs argue that the orders restrict their right to travel to a

specific location within Minnesota to exercise their First Amendment rights.[2]

Defendant moves to dismiss Plaintiffs' right to travel claims, arguing that:  the

right to travel is not being infringed by any current executive order; the Complaint does

not plausibly allege any infringement on the right to travel; any travel claims asserted on

behalf of Jason Lewis for Senate necessarily fail; and the executive orders satisfy the U.S.

Supreme Court's test in *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11 (1905)

("*Jacobson*").

The Fourteenth Amendment recognizes a right to travel from one State to another.

*See Saenz v. Roe*, 526 U.S. 489, 498 (1999) (citing *United States v. Guest*, 383 U.S. 745,

757 (1966)).

> It protects the right of a citizen of one State to enter and to
> leave another State, the right to be treated as a welcome
> visitor rather than an unfriendly alien when temporarily
> present in the second State, and, for those travelers who elect
> to become permanent residents, the right to be treated like
> other citizens of the State.

*Id*. at 500.  Plaintiffs do not rely on the ability to travel into and out of Minnesota.  And in

any event, the Governor's executive orders specifically allow for interstate travel.

(Kramer Decl. ¶ 13, Ex. 10 at 4 ("Individuals may also travel into and out of

Minnesota."); *id*. ¶ 18, Ex. 15 at 4 (discouraging, but not prohibiting, unnecessary

---

[2]      Plaintiffs acknowledge that they "do not rely on Plaintiffs' ability to travel into
and out of Minnesota."  (Doc. No. 19 at 6.)

travel).)[3]  Therefore, Plaintiffs' right to travel claim is based on alleged limitations on the right to intrastate travel.

The right to intrastate travel, however, has not been defined or recognized by the Supreme Court, and the Eighth Circuit Court of Appeals has declined to recognize such a right.  *See Doe v. Miller*, 405 F.3d 700, 713 (8th Cir. 2005) ("We find it unnecessary in this case to decide whether there is a fundamental right to intrastate travel under the Constitution, because assuming such a right is recognized, it would not require strict scrutiny [of the statute at issue].")[4]  Because Plaintiffs assert a claim based on an unrecognized right to intrastate travel and do not otherwise identify any of the recognized components of the right to travel, the Court finds that Plaintiffs have failed to allege a claim for a violation of the right to travel based on the Governor's executive orders.

In addition, even if Plaintiffs had sufficiently alleged that the Governor's executive orders implicate Plaintiffs' constitutionally protected right to travel, the Court would evaluate the alleged intrusion under *Jacobson*.  In *Jacobson*, the Supreme Court held that, when faced with a public health crisis, a state may implement measures that infringe on constitutional rights.  197 U.S. at 26 ("But the liberty secured by the

---

[3]     In addition, Defendant points out that Lewis traveled to Wisconsin shortly after filing the present lawsuit and traveled numerous times before filing the lawsuit.

[4]     Moreover, in *Miller*, the Eighth Circuit acknowledged that the statute at issue might "deter some out-of-state residents from traveling to Iowa," but declined to "extend the [right to travel] doctrine beyond the Supreme Court's pronouncements in the area." *Miller*, 405 F.3d at 712.  To the extent that Plaintiffs assert that out-of-state residents might be deterred by the size limitations of gatherings, such an allegation is similarly beyond the scope of the right as recognized by the Supreme Court.

Constitution of the United States to every person within its jurisdiction does not import

an absolute right in each person to be, at all times and in all circumstances, wholly freed

from restraint.  There are manifold restraints to which every person is necessarily subject

for the common good.").  In *In re Rutledge*, the Eighth Circuit Court of Appeals

explained:

> [W]hen faced with a society-threatening epidemic, a state
> may implement emergency measures that curtail
> constitutional rights so long as the measures have at least
> some "real or substantial relation" to the public health crisis
> and are not "beyond all question, a plan, palpable invasion of
> rights secured by the fundamental law."  Courts may ask
> whether the state's emergency measures lack basic exceptions
> for "extreme cases," and whether the measures are pretextual
> – that is, arbitrary or oppressive.  At the same time, however,
> courts may not second-guess the wisdom or efficacy of the
> measures.

*In re Rutledge*,—F.3d—, Civ No. 20-732, 2020 WL 1933122, at *5 (8th Cir. April 22,

2020) (discussing *Jacobson* and subsequent cases).  "*Jacobson* instructs that *all*

constitutional rights may be reasonably restricted to combat a public health emergency."

*In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020) (emphasis in original).[5]

---

[5]     The Court acknowledges that some courts have refused to apply *Jacobson's* more
deferential standard.  *See*, *e.g.*, *Cnty. of Butler v. Wolf*,—F.3d—, Civ. No. 20-677, 2020
WL 5510690, at *9-10 (W.D. Penn. Sept. 14, 2020) (expressing the court's belief that the
deferential *Jacobson* standard is not appropriate and applying "normal levels of
constitutional scrutiny").  However, it is also worth noting that the majority of courts
across the country have relied on *Jacobson's* framework to analyze emergency public
health measures enacted to combat the spread of COVID-19.  *See, e.g.*, *Page v. Cuomo*,
Civ. No. 20-732, 2020 WL 4589329, at *8 (N.D.N.Y. Aug. 11, 2020) (citing cases and
holding that *Jacobson* "remains alive and well – including during the present pandemic"),
*appeal filed* (2d Cir. August 13, 2020).  This includes the Eighth Circuit.  *Id*. (citing

Here, through Governor Walz's executive orders, Minnesota temporarily required people to stay at home and discouraged unnecessary travel.  In addition, Minnesota has limited the number of people who can gather in one place, both indoors and outdoors. The restrictions were put in place to slow the spread of COVID-19, a highly infectious disease that spreads easily by person-to-person transmission.  The restrictions are clearly related to public health as there are serious health risks associated with COVID-19, a lack of available vaccine or treatment, and a need to reduce the likelihood of overburdening Minnesota's medical resources.  Considered under the deferential standard of *Jacobson*, Plaintiffs' claims fail.  The Court holds that Plaintiffs have not sufficiently alleged that the limitations on the size of gatherings in an effort to slow the person-to-person spread of COVID-19 are "beyond all question" a "plain, palpable invasion" of rights.  *See, e.g.*, *Givens v. Newsom*, Civ. No. 20-852, 2020 WL 2307224, at *4 (E.D. Cal. May 8, 2020) (citing *Jacobson*, 197 U.S. at 30), *appeal filed* (9th Cir. May 29, 2020) (holding that Plaintiffs are not likely to succeed on a challenge to a stay-at-home order as an impermissible exercise of emergency police powers); *Best Supplement Guide, LLC v. Newsom*, Civ. No. 20-965, 2020 WL 2615022, at *5 (E.D Cal. May 22, 2020) (holding that Plaintiffs are unlikely to succeed on a right to travel claim); *McGhee v. City of Flagstaff*, Civ. No. 20-8081, 2020 WL 2308479, at *4 (D. Ariz. May 8, 2020).  Indeed,

---

*Rutledge*, 956 F.3d at 1028) ("[T]he district court's failure to apply the *Jacobson* framework produced a patently erroneous result.").

the challenged limitations on gatherings bear a real and substantial relationship to the public health crisis created by COVID-19.  Accordingly, Counts I and II are dismissed.

Plaintiffs also claim that Governor Walz's executive orders violate the Equal Protection Clause of the Fourteenth Amendment because Jason Lewis for Senate (and the candidate it supports – Jason Lewis) is treated differently from other businesses that are designated as critical or specifically exempted from the general limitations on social gatherings.

The Equal Protection Clause, which commands that no State shall deny any person within its jurisdiction equal protection of the laws, does not create substantive rights.  *See Vacco v. Quill*, 521 U.S. 793, 799 (1997).  Under *Jacobson*, during a public health crisis, the Court analyzes whether "rights secured by the fundamental law" are violated.  *See In re Rutledge*, 2020 WL 1933122, at *5.  Because the Equal Protection Clause does not bestow a fundamental right, Governor Walz's executive orders will pass scrutiny unless they are pretextual.  *Id*.  Here, there is no allegation of pretext and no evidence that the size restrictions on gatherings in Governor Walz's executive orders discriminate on the basis of a suspect classification.  Plaintiffs appear to argue that Jason Lewis for Senate, as a political campaign committee, should be accorded the same exceptions as those made for "weddings, funerals, and services."  The executive orders, however, treat all political candidates and their campaigns the same, and Plaintiffs make no showing that they are similarly situated to the places of worship, funeral homes and other venues that offer gathering space for weddings, funerals, or planned services.  Moreover, Minnesota's decision to limit the size of gatherings, and the exception made for "weddings, funerals,

and services," in the face of the COVID-19 pandemic is rational.  For these reasons, the allegations supporting Plaintiffs' equal protection claim are insufficient.  *See, e.g.*, *Friends of Danny DeVito v. Wolf*, 68 MM 2020, 2020 WL 1847100, at *22-23 (Pa. Apr. 13, 2020) (rejecting equal-protection argument); *Best Supplement Guide, LLC v. Newsom*, 2020 WL 2615022, at *6 (rejecting equal protection claim); *Six v. Newsom*, Civ. No. 20-877, 2020 WL 2896543, at *7 (C.D. Cal. May 22, 2020) ("And the deference accorded the State's classification under *Jacobson* means this [equal protection] claim is not likely to succeed on the merits, nor does it raise a serious question going to the merits.").  Accordingly, Plaintiffs equal protection claim (Count Three) is properly dismissed.[6]

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. No. [12]) is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  September 30, 2020                    s/Donovan W. Frank
                                                              DONOVAN W. FRANK
                                                              United States District Judge

---

[6]     Defendant put forth additional arguments supporting dismissal.  Because the case is properly dismissed for the reasons above, the Court need not, and declines to, rule on Defendant's arguments regarding mootness, standing, and immunity.